**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

NEW LIFE HOMECARE, INC., et al.,

     Plaintiffs,

          v.

BLUE CROSS OF NORTHEASTERN
PENNSYLVANIA, et al.,

     Defendants.

CIVIL ACTION No. 3:06-CV-2485

(JUDGE CAPUTO)

**MEMORANDUM**

Presently before the Court is Defendants Blue Cross of North Eastern

Pennsylvania, et al.'s Motion (Doc. 48) to dismiss the Amended Complaint (Doc. 43) of

Plaintiffs New Life Homecare, Inc., et al.   Because New Life does not have standing to

bring ERISA claims; because the only state law claim preempted by ERISA is the

individual Plaintiffs' breach of contract claim in Count VIII; because Plaintiffs' claims are

not precluded by Defendants' argument that they acted properly when terminating the

group coverage; because in Count IV's breach of fiduciary duty claims, Defendants were

not fiduciaries with respect to the processing of enrollment forms but Plaintiffs did state a

claim upon which relief can be granted arising out of Defendants' failure to offer an option

for a waiver; because Plaintiffs have not stated claims upon which relief can be granted in

Counts III, V, or VI but have stated claims upon which relief can be granted in the ERISA

§ 510 claim (Count VII), New Life's breach of contract claim (Count VIII), and New Life

and Malia's tortious interference with contratual relations claim (Count IX), Defendants'

motion will be granted in part and denied in part.   The Court has jurisdiction over this

matter pursuant to 28 U.S.C. §§ 1331 and 1367.

## BACKGROUND

Plaintiffs filed their Amended Complaint (Doc. 43) on August 15, 2007.  Therein, they allege the following:   Plaintiff New Life Homecare Inc. (New Life) is a specialty pharmacy providing for the home care and treatment of those with bleeding disorders. (Am. Compl., Doc. 43 ¶ 6.)  Plaintiff the Reverend Gregory M. J. Malia is President and Chief Executive Officer of New Life and also a participant in the company's group health insurance plan.  (*Id.* ¶ 7.)  Plaintiff Frederick Lee is Vice President and a plan participant, and Plaintiffs Barbara Badum, Rodger Deaton, Jerome Drogalis, Margaret Falzone, Zaida Gonzales, Christina Miles, Michael Pajka, Matthew Robinson, Sally Roper, Dawn Sweeny, and Michael Wishneski are employees of New Life and participants in the plan. (*Id.* ¶¶ 8-19.)  The group insurance policy through which New Life offers coverage to its employees and their dependents was issued by Defendants Blue Cross of Northeastern Pennsylvania and Highmark Blue Shield (collectively, "Blue Cross"), both independent licensees of Blue Cross and Blue Shield Association.  (*Id.* ¶¶ 20-23, 28.).  Defendant First Priority Health, an HMO, and Defendant First Priority Life Insurance Company, Inc., are subsidiaries of Blue Cross of Northeastern Pennsylvania.  (*Id.* ¶¶24-27.)

Plaintiffs allege that the group insurance agreement between New Life and the Blue Cross Defendants ("the Policy") has been annually renewed without interruption since 2001 and that, on or about October 25, 2006, Blue Cross offered to renew the Policy for 2007 and New Life accepted this offer, giving rise to a "2007 renewal

2

agreement." (*Id.* ¶¶ 30-33.)  Plaintiffs' claim arises out of Blue Cross' cancellation of the

2007 Policy based on New Life's alleged noncompliance with the underwriting

requirements.  Plaintiffs allege in part that this cancellation resulted in New Life

employees having to apply for individual conversion policies under the plan, which are

"significantly more costly and afford less benefits than the 2007 policy." (*Id.* ¶ 55.)

Several of these Plaintiff-employees themselves have bleeding disorders or have children

who do and have been experiencing interruptions and restrictions in access to medically

necessary services, medicines, and supplies.  (*Id.* ¶ 57.)  Additionally, New Life has

suffered loss of clients, sales, and income.  (*Id.* ¶ 58.)

Plaintiffs also allege that: At all relevant times, New Life and the Blue Cross

Defendants had a separate relationship related to New Life's business as a pharmacy.

(*Id.* ¶ 29.)  In this relationship, Blue Cross, as an insurer, "provides, among other things,

prescription drug benefits administered by its pharmacy benefits manager, Express

Scripts, Inc." (*Id.*)  On October 15, 2004, Blue Cross sent a letter to thousands of its

subscribers announcing that effective January 1, 2005, New Life would no longer be a

participating provider in its Specialty Pharmacy Provider Network and promoting instead a

different specialty pharmacy, owned by Express Scripts.  (*Id.* ¶ 61.)  In response, New

Life brought a civil action in the Court of Common Pleas of Luzerne County, and on

December 21, 2004, the parties entered a "Stipulation of Settlement" wherein Blue Cross

and Express Scripts agreed to promote New Life as a participating provider and New Life

agreed to release those parties from the state court litigation and accept reduced rates

for certain products in anticipation of increased business.  (*Id.* ¶¶ 60, 62.)  Blue Cross,

3

however, failed to satisfy its obligations under this settlement, New Life sought further judicial intervention, and in September 2005, the parties entered into a second settlement placed on the record in open court, wherein Blue Cross agreed to send a letter to subscribers specifically promoting New Life.  (*Id.* ¶ 65.)

In September 2006, however, Express Scripts informed New Life that it would no longer maintain its Specialty Inject Network and would therefore terminate New Life as a "participating pharmacy."  (*Id.* ¶ 66.)  Express Scripts also sent correspondence to New Life's customers on Blue Cross letterhead stating that New Life would no longer be a participating provider after November 1, 2006.  (*Id.* ¶ 67.)  New Life's counsel wrote to Express Scripts on September 23 and November 13, 2006, requesting corrective action, but received no response until a letter from Blue Cross on November 16, 2006, questioning New Life's provider status.  (*Id.* ¶¶ 68-69.)

This letter questioning New Life's provider status came only shortly before Blue Cross sent New Life notice, on November 21, 2006, that it intended to terminate the group health insurance through which New Life covered its employees.  (*Id.* ¶ 70.) Plaintiffs allege further that when New Life attempted to procure other group health insurance coverage, the Blue Cross Defendants "arbitrarily refused to insure New Life or any affiliated group, including a separate and distinct corporation ... and a wholly owned corporation ... in violation of Blue Cross's own contract."  (*Id.* ¶ 71.)  The Blue Cross Defendants also, in the course of this litigation, took measures to harm Plaintiffs New Life and Reverend Malia, including directing Express Scripts to terminate New Life as a participating provider in Blue Cross's specialty pharmacy network effective August 18,

4

2007, and, "with full knowledge of ... Malia's chronic and life threatening health conditions, ... discriminat[ing] against the Reverent Malia by implying that they will refuse to insure the Reverend ... or any company in which he holds a managerial position. (*Id.* ¶¶ 72-73.)

Plaintiff bring nine (9) claims.  In Count I, they allege that Blue Cross unjustifiably breached its contractual agreement with New Life regarding the 2007 policy and seek to enforce the terms of the Plan pursuant to ERISA § 502(a).  (*Id.* ¶¶ 74-79.)  In Count II, Plaintiffs claim the 2007 policy agreement is still in force and seek clarification of their rights to future benefits under that agreement, pursuant to § 502(a)(1)(B) of ERISA.  (*Id.* ¶¶ 80-84.)  In Count III, Plaintiffs claim Defendants discriminated against Malia based on his chronic and life-threatening health conditions, thus violating the non-discrimination provision of the Health Insurance Portability and Accountability Act (HIPPA), 29 U.S.C. § 1182(a)(1).  (*Id.* ¶¶ 85-89.)  In Count IV, Plaintiffs claim that Defendants breached their fiduciary duties under the 2006 and 2007 policy agreements by obstructing New Life from coming into compliance with underwriting requirements.  (*Id.* ¶¶ 90-99.)  In Count V, Plaintiffs claim that Defendants are equitably estopped, under ERISA § 502(a)(3), from denying the existence or enforcement of the 2007 policy and subsequent renewals.  (*Id.* ¶¶ 100-108).  In Count VI, Plaintiffs claim that if the policy is terminated, individual plan participants are entitled under federal law, state law, and the 2006 policy agreement to coverage under "individual conversion contracts," available under the Plan, but that Defendants have failed to offer such coverage to certain individuals, breaching the contract and violating the applicable claims procedure provided under ERISA § 503(1).

(*Id.* ¶¶ 109-13.)  In Count VII, Plaintiffs claim that Defendants discriminated against them for exercising their rights under an employee benefit plan, in violation of ERISA § 502. (*Id.* ¶¶ 114-17).  In Count VIII, Plaintiffs bring a state law claim of breach of contract based on Defendants' repudiation of the parties' 2007 renewal agreement and issuance of cancellation notices without a valid basis.  And in Count IX, Plaintiffs bring a state law claim of tortious interference with business and contractual relations.  (*Id.* ¶¶ 123-28.)

Defendants move to dismiss Plaintiffs' Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  This motion is fully briefed and ripe for disposition.

## LEGAL STANDARD

### I. Motion to Dismiss Pursuant to Rule 12(b)(1)

Motions to dismiss for lack for standing may be reviewed under Federal Rule of Civil Procedure 12(b)(1).  *Maio v. Aetna*, 221 F.3d 472, 282 & n.7 (3d Cir. 2000).  Rule 12(b)(1) provides for dismissal of an action where the court lacks jurisdiction over the subject matter of that action.  A defendant may challenge the existence of subject matter jurisdiction in two fashions.  *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).  Where a defendant attacks the complaint as deficient on its face, the Court must assume that "the allegations contained in the complaint are true." *Id.*  In deciding a Rule 12(b)(1) facial attack, the court may consider the allegations contained in the complaint and the exhibits attached to the complaint; matters of public record such as court records, letter decisions of government agencies and published

6

reports of administrative bodies; and "undisputably authentic" documents which the plaintiff has identified as a basis of his claims and which the defendant has attached as exhibits to his motion to dismiss. *Hunter v. United States*, 2000 WL 1880257, at *3 (M.D. Pa. Dec. 15, 2000). *See generally Pension Benefit Guar. Corp. V. White Consol. Indus. Inc.,* 998 F.2d 1192, 1196-97 (3d Cir. 1993).

When the motion to dismiss attacks the existence of subject matter jurisdiction in fact, no presumptive truthfulness attaches to the allegation included in the plaintiff's complaint. *Carpet Group Int'l v. Oriental Rug Imps. Ass'n, Inc.*, 227 F.3d 62, 69 (3d Cir. 2000) (quoting *Mortensen*, 549 F.2d at 891). Thus, the Court may weigh all of the available evidence to satisfy itself that subject matter jurisdiction indeed exists. *Id.* It is important to note also that the existence of disputed material facts will not preclude the Court from evaluating the jurisdictional allegations set forth in the compliant. *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).

In the present matter, the portion of Defendants' motion related to standing relies on Plaintiff's allegations and so will be treated as a facial attack. Accordingly, I will consider the allegations contained in the Amended Complaint and attachments thereto.


**II. Motion to Dismiss Pursuant to Rule 12(b)(6)**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, Plaintiff has not plead "enough facts to state a claim to relief that is plausible

7

on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. ----, 127 S. Ct. 1955, 1960, 167 L.

Ed.2d 929 (2007), or alleged "facts sufficient to raise a right to relief above the

speculative level." *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 317 (3d Cir. 2007).

In light of Federal Rule of Civil Procedure 8(a)(2), specific facts are not necessary; the

statement need only "give the defendant fair notice of what the . . . claim is and the

grounds upon which it rests."  *Erickson v. Pardus*, --- U.S. ----, 127 S. Ct. 2197, 2200,

167 L.Ed.2d 1081 (2007) (per curiam).  "[T]he factual detail in a complaint [must not] be

so sketchy that the complaint does not provide the type of notice of the claim to which the

defendant is entitled under Rule 8." *Airborne Beepers & Video, Inc. v. AT&T Mobility

LLC*, 499 F.3d 663, 667 (7th Cir. 2007).

     In deciding a motion to dismiss, the Court should consider the allegations in the

complaint, exhibits attached to the complaint and matters of public record.  *See Pension

Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

The Court may also consider "undisputedly authentic" documents where the plaintiff's

claims are based on the documents and the defendant has attached a copy of the

document to the motion to dismiss.  *Id.*  The Court need not assume that the plaintiff can

prove facts that were not alleged in the complaint, *see City of Pittsburgh v. West Penn

Power Co.*, 147 F.3d 256, 263 (3d Cir. 1998), nor credit a complaint's "bald assertions" or

"legal conclusions." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997).

     When considering a Rule 12(b)(6) motion, the Court's role is limited to determining

whether the plaintiff is entitled to offer evidence in support of the claims.  *See Scheuer v.

Rhodes,* 416 U.S. 232, 236 (1974).  The Court does not consider whether the plaintiff will

ultimately prevail.  *See id.*  In order to survive a motion to dismiss, the plaintiff must set

forth information from which each element of a claim may be inferred.  *See Kost v.*

*Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  The defendant bears the burden of

establishing that the plaintiff's complaint fails to state a claim upon which relief can be

granted.  *See Gould Elecs. v. United States,* 220 F.3d 169, 178 (3d Cir. 2000).


## DISCUSSION

### I. The Record Before the Court

The parties refer to a number of agreements: the group insurance agreement for

calendar year 2006 ("2006 Policy"); a "2007 renewal contract" ("2007 Policy") which

Plaintiffs indicate was entered into when they accepted Defendants' offer, in an October

2006 letter, to renew the policy (*see* Doc. 43 ¶ 76; Br. in Opp'n, Doc. 54, at 7); the state

court settlement agreements to which Plaintiffs refer; and the March 2007 "Partial

Settlement Agreement and Release" that Defendants cite.

Of these, only two (2) are included in the record on the Motion to Dismiss: (1) the

2006 Policy (Pls.' Ex. A, Doc. 43), which is attached to Plaintiffs' Amended Complaint,

and (2) excerpts from the 2007 Policy  – specifically, the Underwriting Requirements

section, Table of Contents page, and the page including termination provisions – which

Defendants attached to their Motion to Dismiss.  (*See* Defs.' Ex. 1, Doc. 49).

Undisputedly authentic documents attached to a motion to dismiss may be considered

when the Plaintiffs' claims are based on those documents, *Pension Benefit Guar. Corp.*,

988 F.2d at 1196, and Plaintiffs base some of their claims, for instance the claims that

Defendants breached the 2007 Policy and breached their fiduciary duties, on the 2007

Policy agreement, including, specifically, its Underwriting Requirements.  (*See* Am.

Compl., Doc. 43 ¶¶ 77-79, 82-84, 94-95, 105-08).  The March Settlement, although

submitted, does not meet the requirements set forth in *Pension Benefit Guar. Corp.* for

inclusion in the record on a motion to dismiss.


## II. Standing to Raise ERISA Claims

### A. Individual Plaintiffs' Standing

The statutory standing requirements of ERISA § 502(a) provide that a civil action

may be brought only by certain parties in certain situations.  A participant or beneficiary

may sue "to recover benefits due to him under the terms of his plan, to enforce his rights

under the terms of the plan, or to clarity his rights to future benefits under the terms of the

plan." 29 U.S.C. § 1132(a)(1)(B).  Also, a "participant, beneficiary, or fiduciary" may bring

an action "(A) to enjoin any act or practice which violates any provision of this subchapter

or the terms of the plan, or (B) to obtain other appropriate relief (i) to redress such

violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." *Id.*

§ 1132(a)(3).

A "participant" is "any employee or former employee of an employer ... who is or

may become eligible to receive a benefit of any type from an employee benefit plan which

covers employees of such employer ..., or whose beneficiaries may be eligible to receive

any such benefit." 29 U.S.C. § 1002(7).  To demonstrate that one "may become eligible"

for benefits, "a claimant must have a colorable claim that (1) he or she will prevail in a suit

for benefits, or that (2) eligibility requirements will be fulfilled in the future." *Leuthner v. Blue Cross & Blue Shield of Northeastern Pa.*, 454 F.3d 120, 124 (3d Cir. 2006).  Having a "colorable claim" requires a "lower burden of persuasion than showing likelihood of success on the merits." *Id.*

Defendants argue that the individual Plaintiffs lack standing to obtain future insurance coverage because "there was no continued group insurance plan" at the time Plaintiffs filed their most recent complaint and therefore, the Plaintiffs were not participants or beneficiaries at the time their compliant was filed.  (Reply Br., Doc. 57, at 8.)  But the Third Circuit Court of Appeals has stated that "[t]here is an open question in our Court as to when statutory standing must attach." *Graden v. Conextant Sys. Inc.*, 496 F.3d 291, 296 n.7 (3d Cir. 2007).  In *Graden*, the court noted that *Leuthner* declined to decide the issue with regard to a § 1132(a)(3) claim for equitable relief and that *Daniels v. Thomas & Betts Corp.*, 263 F.3d 66, 78 (3d Cir. 2001), held that a person need only be a participant at the time of breach to have standing in the context of a § 1132(a)(1)(A) suit.  *Id.*  The *Daniels* court did not elaborate on its holding; it simply stated that "[a]n individual who 'is ... entitled' to a plan benefit or who 'may become entitled' to such a benefit, as of the time that individual makes the request of the plan administrator, thus becomes a 'beneficiary.'" 263 F.3d at 78.  The *Graden* court stated that although the issue was not squarely before it, "one would expect the *Daniels* holding to apply here ... [b]ecause the relevant language of § 1132(a)(1)(A) and (a)(2) are the same."  263 F.3d at 78.  Likewise, nothing in the language of the subsections under which Plaintiffs claim standing,(a)(1)(B) and (a)(3), differs from that of (a)(1)(A) in a way that suggests standing

11

should be evaluated at a different time under those subsections.

Furthermore, even if the Plaintiffs no longer have standing, the Third Circuit Court of Appeals has also held that "in the proper case, we may find that a plaintiff has statutory standing if the plaintiff can in good faith plead that she was an ERISA plan participant or beneficiary and that she still would be but for the alleged malfeasance of a plan fiduciary." *Leuthner*, 454 F.3d at 129 (ultimately concluding that claimant's allegations did not satisfy this but-for exception and thus did not have a colorable claim for benefits). The essence of this action is that the individual Plaintiffs would still be participants in the 2007 Policy but for Defendants' alleged breach of the 2007 agreement, including a provision that allegedly gave New Life until December 31, 2007, to meet all underwriting requirements, and alleged obstruction of New Life's attempts to bring the plan into compliance with the underwriting requirements. The individual Plaintiffs thus have a colorable claim to relief, and I will not grant Defendants' motion on the basis that these Plaintiffs do not have standing under ERISA.

### B. New Life's Standing

Defendants correctly point out that Plaintiffs have not alleged that New Life was a participant or beneficiary. Indeed, "under the plain language of the statue, an individual must be an employee or former employee in order to bring suit as a plan participant under ERISA." *Ginsberg v. Independence Blue Cross*, No. Civ. A. 01-66, 2001 WL 267874, at *1 (E.D. Pa. Mar. 16, 2001). Plaintiffs claim instead that "New Life, as an employer and the plan sponsor, has standing to bring suit under ERISA." (*See* Br. in

Opp'n, Doc. 54, at 11.)  Concerning New Life's status as employer, ERISA's statutory

standing requirements allow an employer to bring an action only in the limited situation

when it has obligations to contribute to a multiemployer plan and either seeks to

challenge a violation of 29 U.S.C. § 1021(f), regarding funding notices, or to seeks to

force the sponsor of an "endangered" or "critical" status multiemployer plan to adopt,

update, or comply with a funding improvement or rehabilitation plan.  *Id.* § 1132(a)(8) &

(10).  Neither situation exists here.

Concerning New Life's claim to be a "plan sponsor," this appears to be an allusion

to being a fiduciary, as Plaintiffs cite the statutory section that defines fiduciary.  Under its

definition, one

> is a fiduciary with respect to a plan to the extent (i) he exercises any
> discretionary control respecting management of such plan or exercises any
> authority or control respecting management or disposition of its assets,  (ii)
> he renders investment advice ... with respect to any moneys or other
> property of such plan, or has any authority or responsibility to do so, or (iii)
> he has any discretionary authority or discretionary responsibility in the
> administration of such plan.

29 U.S.C. § 1002(21)(A).  As Defendants point out, New Life alleged that it performed

"purely ministerial functions with respect to administration of the Plan."  (Doc. 43 ¶ 37.)

Taking the allegations in the Amended Complaint as true, New Life is not a fiduciary.

*See Arrow Drilling Co., Inc. v. Carpenter*, No. 2:02-CV-9097, 2003 WL 23100808, at *2

n.5 (E.D. Pa. Sept. 23, 2003) (stating that even if plaintiff employers were plan sponsors,

they still would not be fiduciaries - and thus would still not have standing to sue - unless

they exercised discretion over the plan's management); *Eureka Paper Box Co. v. WMBA,*

*Inc., Voluntary Employee Benefit Trust*, 767 F. Supp. 642, 649-50 (M.D. Pa. 1991)

(holding employers do not have standing to sue under ERISA except in their capacity as fiduciaries).  New Life therefore does not have standing to bring an action under ERISA.

## III. Proper Termination of Group Insurance Relationship

Defendants argue that Blue Cross properly terminated its group insurance relationship with New Life and that, therefore, Plaintiffs' Amended Complaint should be dismissed in its entirety; later in their Brief, they argue for the same reason that Counts I and II, specifically, fail because New Life breached the underwriting requirements.

Both the 2006 and the 2007 policies could be terminated, at Blue Cross' option, "if the Contract Holder [New Life] breaches the terms of the Underwriting Requirements." (2006 Policy, Pl.'s Ex. A, Doc. 43, at 46; 2007 Policy, Defs.' Ex. 1, Doc. 49, at 47.)  The 2006 underwriting requirements mandated that "[n]o more than 15% of *eligible* employees may reside more than 20 miles outside of the Blue Cross ... service area." (Pl.'s Ex. A, Part III, at 1) (emphasis added).  Under the 2007 Policy, "[n]o more than 15% of *enrolled* employees may reside more than 20 miles outside of the ... service area." (Defs.' Ex. 1, Part III, at 1) (emphasis added).  Additionally, under both policies, "a minimum of 75% of the eligible participants must be enrolled in the group benefit program."  (Pl.'s Ex. A, Part III, at 1; Defs.' Ex. 1, Part  III, at 1.)  Before September 10, 2006, when,  according to Plaintiffs' Amended Complaint, nine (9) of thirteen (13), that is, 69.2 percent, of eligible employees were enrolled, and two (2) out of thirteen (13), that is, 15.4 percent, of the eligible employees lived out of state, New Life did not satisfy the

underwriting requirements of the 2006 Policy.[1]  (*See* Doc. 43 ¶ 43.)  After September 10, 2006, when Plaintiff Rodger Deaton, who lived out of state, enrolled, the seventy-five percent requirement was satisfied, but with three (3) enrollees, that is, twenty-three (23) percent of eligible employees living out of state, New Life was not in compliance with the requirements of the 2006 Policy.  (*See id.* ¶ 44.)  Those three (3) employees also constituted thirty (30) percent of enrolled employees, a figure which fails to satisfy the 2007 requirements.

Plaintiffs acknowledge that this much is true, but besides raising questions of waiver and estoppel, they argue that any violations of the 2006 Policy are irrelevant.  The 2006 policy provided for coverage only through the end of 2006, and Defendants sought only to terminate group coverage effective January 1, 2007.  While violations of the 2006 Policy gave Defendants the option to terminate 2006 coverage (*see* 2006 Policy, Pl.'s Ex. A, Part I, at 1 ("Your group coverage is effective January 01, 2006 and will continue until the following December 31, 2006 unless terminated as provided herein.")), any such violations did not give Defendants a right to terminate or repudiate coverage under the 2007 Policy, Plaintiffs argue.  "[T]he 2007 renewal contract entered on October 25, 2006 was a distinct contract."  (Br. in Opp'n, Doc. 54, at 7.)

Furthermore, concerning their rights under the 2007 Policy, Plaintiffs respond that "New Life was afforded until December 31, 2006, to meet the underwriting criteria for the

---

[1]

Although the facts viewed in the light most favorable to Plaintiffs suggest that Blue Cross may not have considered the 15.4 percent figure (two (2) employees) to violate the fifteen (15) percent requirement, New Life undisputably did not satisfy the seventy-five (75) percent enrollment requirement before September 10, 2006.

15

2007 contract."  (Br. in Opp'n, Doc. 54, at 7.)  Defendants retort that Plaintiffs do not point

to any contract language in the 2007 Policy granting them a right to cure defects, and

also argue that "the 2007 contract never came into existence," because New Life did not

comply with its underwriting requirements.  (Defs.' Reply Br., Doc. 57, at 6 n.4.)  But

these factual disputes Defendants raise are not appropriate at this stage.  On a motion to

dismiss, the Court's role is not to weigh evidence, but to determine whether the Plaintiffs

are entitled to offer evidence to support their claims.  The entirety of the 2007 Policy is

not before the Court, and the excerpts that are in the record do not clarify the questions

relevant to Defendants' argument: when the contract was intended to come into

existence, when its requirements were to become enforceable, and how long Plaintiff was

afforded to meet the underwriting criteria for the 2007 contract.  At this stage, therefore,

Plaintiffs' claims will not be dismissed based on Defendants' argument that they properly

terminated their group insurance relationship with Plaintiffs.


**IV. March Settlement Agreement Does Not Preclude Plaintiffs' Claims**

        Defendants next argue that the "Partial Settlement Agreement and Release" of

March 2007 precludes Plaintiffs' claims because Plaintiffs therein agreed, Defendants

argue, that Blue Cross would terminate group insurance on March 31, 2007.  (Br. in

Supp., Doc. 49, at 9.)  This agreement, however, is not before the Court and Defendants'

claims based on it cannot be evaluated at this time.

## V. Count III: HIPAA Violation

In Count III, Plaintiffs allege that Defendants violated 29 U.S.C. § 1182(a), which prohibits health insurance issuers who offer group health insurance coverage from establishing "rules for eligibility (including continued eligibility) of any individual to enroll under the terms of the plan based on [certain] health status-related factors."  Plaintiffs argue that Defendants did so by making discriminatory statements directed at Plaintiff Malia and failing to provide coverage to Plaintiffs or any group in which Malia is associated.  (Am. Compl., Doc. 43 ¶¶ 87-88.)

Defendants argue that this Count must fail as a matter of law because § 1182 applies "only to the enrollment of particular individuals in existing group insurance plans," not to the decision to provide or not provide coverage to any group, and does not prohibit any statements.  (Br. in Supp., Doc. 49, at 14 n.9.)  Plaintiffs' Brief in Opposition does not address this argument.  Because § 1182 does not apply to the conduct Plaintiffs allege in Count III, it will be dismissed for failure to state a claim upon which relief can be granted.

## VI.  Count IV: Plaintiff's Breach of Fiduciary Duty Claim

### A. Applicable Statutory Provisions

Plaintiffs bring their claims in this Count pursuant to two (2) ERISA provisions. First, under 29 U.S.C. § 1131(a)(1)(A), participants and beneficiaries may seek relief for administrators' failures to provide them with information and notice in certain situations. Because there are no allegations that Blue Cross failed in any duty to provide the participant Plaintiffs with information, Defendants' motion to dismiss will be granted as to

17

the claim brought under § 1131(a)(1)(A).

Plaintiffs' claim will proceed under 29 U.S.C. § 1109 and 1132(a)(2), under which Defendants who breach fiduciary obligations are personally liable to make good to the plan for any losses and disgorge any of the fiduciaries' profits that resulted from the breach, and are subject to equitable or remedial relief as a court may deem appropriate, including removal of the fiduciaries.

**B. Plaintiffs' Claims**

Plaintiffs claim that Defendants have fiduciary duties under ERISA because of their authority regarding enrollment eligibility decisions and that Defendants breached those fiduciary duties under the 2006 and 2007 Policies "by failing to remove an out-of-state employee from the Plan in order to comply with the service area requirements, ... to offer New Life an option to request a waiver for its out-of-state employee," or to enroll three (3) additional employees.  (Am. Compl., Doc. 43 ¶¶ 91-95.)   Defendants move to dismiss Count IV on the basis that "the creation, amendment or termination of an ERISA welfare plan is not a fiduciary act."  (Br. in Supp., Doc. 49, at 15-16.)  Plaintiffs respond that their claim is based not on Defendants' termination of the plan, but rather on Defendants' failure to process enrollment requests under the plan.  (Br. in Opp'n, Doc. 54, at 12-13.)

**C. Defendants Were Not Fiduciaries with Respect to Processing Enrollment Forms for Out-of-State Employee and Adding Three Additional Employees**

 "A court must ask whether a person is a fiduciary with respect to the particular activity in question."  *Moench v. Robertson*, 62 F.3d 553, 561 (3d Cir. 1995) (citation omitted).  Thus, at the outset, the Court must determine whether Defendants were

18

fiduciaries with respect to each challenged action.  A person is a fiduciary to the extent "(i) he exercises any discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, ... or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."  29 U.S.C. § 1002(21)(A).  Every employee benefit plan describes procedures "for the allocation of responsibilities for the operation and administration of the plan."  *Id.* § 1102.

Defendants were not fiduciaries with respect to the first and third challenged actions: failing to process change of enrollment forms allegedly submitted in an attempt to remove the latest-added out-of-state employee from the plan and to add three (3) additional employees in attempts by New Life to comply with its underwriting requirements.  Processing an enrollment form is a ministerial function, not a discretionary one.  *See Confer v. Custom Eng'g Co.*, 952 F.2d 34, 39 (3d Cir. 1991) (stating that "[s]ince discretionary authority, responsibility or control is a prerequisite to fiduciary status, it follows that persons who perform purely ministerial tasks, such as claims processing and calculation, cannot be fiduciaries because they do not have discretionary roles" and holding that the "Plan Supervisor" to whom plan's named fiduciary delegated some tasks was not also a fiduciary, in part because it "had no discretion to deny or allow [plaintiff's] claim.  [It] had an obligation to follow the written plan instrument"); *see also* Dep't of Labor Interpretive Bulletin 75-8, 29 C.F.R. § 2509.75-8 ("[A] person who performs purely ministerial functions such as the types described above," including "*[a]pplication of rules determining eligibility* for participation or benefits," and who does so

19

"within a framework of policies, interpretations, rules, practices and procedures made by other persons is not a fiduciary....") (emphasis added).

Here, the "Enrollment Procedure" section of the 2006 Policy provides that "[a]ny person who satisfies the membership eligibility requirements is eligible to enroll with the Plan by submitting a completed enrollment application form to the Plan"[2] and that "[e]nrollment of the listed Member(s) into the Plan shall be effective on acceptance by the Plan."  (2006 Policy, at 12-13.)  This language suggests that the most Blue Cross does is apply the rules of eligibility set forth in the Policy; the language does not give Blue Cross discretion to deny the application of any employee who satisfies the eligibility requirements.  Although Plaintiffs point to a statement in the 2006 Policy that "[t]he determination of eligibility will be made by the Plan" (*id.* at 12), this statement appears under the "Dependent Eligibility" section, which is not relevant here because Plaintiffs' claims concern the enrollment of employees, not their dependents.  The Policy does not contain parallel language in its "Subscriber Eligibility" section.  (*See id.* at 11.)  It only sets forth minimum standards of eligibility for individual employees, excluding part time, seasonal, and other workers, but *not* excluding any individual workers based on where they live.  (2006 Policy, Part III, at 3.)  The Policy goes on to give New Life some discretion to be more restrictive in its definitions of employee eligibility and reserves to Blue Cross and First Priority Health discretion to approve or disapprove any attempts by New Life to set standards that are less restrictive.  (*See id.*)

_____

[2]

In the 2006 Policy, "the Plan" refers to the Blue Cross Defendants and "Contract Holder" refers to New Life. (2006 Policy, at 3, 8.)

This discretion afforded to Defendants, though, is irrelevant for two (2) reasons: First, it extends only to allowing New Life to eliminate some of the minimum *individual* eligibility standards; those standards, unlike the *group* requirements with which New Life had to comply, do not address where an employee lives, and thus are irrelevant to Plaintiffs' current claim.  Second, the discretion extends only to decisions about *setting* eligibility standards, not *applying* the current standards to any individual employee, and certainly not processing or failing to process any individual change of enrollment forms.

Finally, the Policy also provides that while New Life is required "to certify that Employees meet all eligibility requirements set forth under this Contract," the Plan has "the right to perform due diligence as to the eligibility of Members" and that "if it is determined that a Member no longer meets the eligibility requirements included in [the Schedule of Eligibility] the Plan will terminate the Member."  (*Id.* at 46.).  Despite the use of the passive voice in "if it is determined," this language may in fact give Blue Cross discretionary authority for determining whether a member should be removed for no longer meeting the Policy's individual eligibility requirements.  Those requirements, though, do not include residence within the service area, and they do not exclude those members whose enrollment would put New Life in breach of the requirements governing its group coverage.  Defendants' discretion thus does not extend to the decision to terminate or not terminate the enrollment of an eligible employee, on New Life's request, simply because his enrollment jeopardized New Life's compliance with its requirements under the Policy.  That discretion, further, does not extend to the ministerial task of processing, or not processing, a change of enrollment form.

Because Defendants were not fiduciaries with respect to the challenged enrollment

processing actions, I will grant Defendants' motion to dismiss these portions of Count IV.

### D. Offering New Life a Waiver Option

The other challenged action is failing to offer New Life an option to request a

waiver for its out-of-state employee, an act that involves some discretion.  I cannot decide

as a matter of law at this stage that Defendants were not fiduciaries with respect to this

action and will move on to explore the content of the relevant fiduciary duty.  A fiduciary

must discharge his duties with respect to the plan "solely in the interest of the participants

and beneficiaries and (A) for the exclusive purpose of (i) providing benefits to participants

and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan."

29 U.S.C. § 1104(a)(1).  The fiduciary must do so "with the care, skill, prudence, and

diligence under the circumstances then prevailing that a prudent man acting in a like

capacity and familiar with such matters would use in the conduct of an enterprise of a like

character and with like aims."  *Id.* § 1104(a)(1)(B).  Additionally, where an insurance plan

is funded, interpreted, and administered by an insurance company,  a "heightened"

arbitrary and capricious standard applies to reviewing the fiduciary's decisions.  *Pinto v.

Reliance Standard Life Ins. Co.,* 214 F.3d 377, 383, 388-90 (3d Cir. 2000).  A heightened

review allows a court "to take notice of discrete factors suggesting that a conflict may

have influenced the administrator's decision."  *Id.* at 379.  Applying the heightened

standard, "[t]he court not only considers the result of the administrator's decision, but the

process by which it was reached."  *Blakely v. WSMS Indus., Inc.*, No. 02-1631-SLR, 2004

WL 1739717, at *8 (D. Del. July 20, 2004).

To state a claim, Plaintiffs must allege that by failing to offer a waiver option to New Life, Defendants breached a fiduciary duty owed to them, the employee-Plaintiffs. To this end, Plaintiffs have alleged that Defendants' failure to act was "solely in the interest of *Blue Cross* and in direct contravention of the interests of the Plan participants;" (Br. in Opp'n, Doc. 54, at 14); constituted an abuse of administrative authority, in order "to intentionally cause irreparable harm" to the Plaintiff employees; and breached the fiduciary duties they owe to Plaintiffs to "honor the terms of the plan and enroll eligible employees."  (Am. Compl., Doc. 43 ¶¶ 96-97.)

In response, Defendants point to the requirement that a fiduciary must fulfill his duties "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with [this statute]."  *Id.* § 1104(a)(1)(D). The Third Circuit Court of Appeals has interpreted this rule to mean that "[t]he plan administrator's duty to administer a plan for the sole benefit of its participants is qualified by his obligation to interpret a plan consistent with the documents and instruments governing the plan. ... [T]he plan administrator is not obligated to 'resolve every issue of interpretation in favor of the plan beneficiaries.'"  *McElroy v. SmithKline Beecham Health & Welfare ...*, 340 F.3d 139, 142 (3d Cir. 2003) (quoting *O'Neil v. Ret. Plan for Salaried Employees of RKO Gen., Inc.*, 37 F.3d 55, 61 (2d Cir. 1994)).  Defendants argue that Plaintiffs' claim "runs afoul" of this rule because the Policies did not provide for provision of an opportunity for a waiver, or what Defendants characterize as an "opportunity [for New Life] to cure its breach."  (Br. in Supp., Doc. 49, at 16 n.10.)  But Defendants have not demonstrated that offering New Life an opportunity for a waiver would have put

23

Defendants in violation of the Policy.  In light of this fact, and of the factual inquiry

involved in a heightened arbitrary and capricious review, I will deny Defendants' motion to

dismiss the portion of the breach of fiduciary duty claim in Count IV concerning

Defendants' failure to offer New Life an option for a waiver.


## VII. Count V: Equitable Estoppel

Plaintiffs claim in Count V that Blue Cross should be equitably estopped from

denying the existence or validity of the 2007 Policy.  This claim, brought pursuant to

ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), alleges only that New Life detrimentally relied

on Defendants' representations.  No allegations in support of Count V suggest that the

individual Plaintiffs detrimentally relied on any material representations by Defendants –

allegations that are essential to a claim for equitable estoppel under § 502(a)(3).  *See*

*Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 571 & n.4 (3d Cir. 2006).  Therefore,

because New Life lacks standing to bring ERISA claims, as discussed above, I will grant

Defendants' motion to dismiss Count V.


## VIII. Count VI: Claim Under § 1133

Under 29 U.S.C. § 1133(1), "every employee benefit plan shall ... provide

adequate notice in writing to any participant or beneficiary whose claim for benefits under

the plan has been denied, setting forth the specific reason for such denial, written in a

manner calculated to be understood by the participant."  Plaintiffs claim that one benefit

provided under their policy, after their group coverage was terminated, is eligibility for

"individual conversion contracts."  (Doc. 43 ¶ 110.)  They allege that they and their

beneficiaries have made written applications for conversion policies but Blue Cross has

failed to offer such policies to certain individuals.  (*Id.* ¶¶ 111-12.)  This violation, they

claim, harmed participants and beneficiaries by leaving them without health insurance

since the termination of the group policy.  (*Id.* ¶ 113.)

Defendants move to dismiss on the ground that § 1133 does not create a private

right of action.  *See Blakely*, 2004 WL 1739717, at *10 ("Section 1133, which mandates

certain claims procedures for beneficiaries under ERISA, does not create a private right

of action.").  This is one application of "the general principle that an employer's or plan's

failure to comply with ERISA's procedural requirements does not entitle a claimant to a

substantive remedy."  *See Ashenbaugh v. Crucible Inc.*, 854 F.2d 1516, 1532 (3d Cir.

1988) (noting this general rule in context of claim that fiduciaries did not respond to

participants' requests for information about Plan funding and administration).  Although

an exception to the general rule may be made "in some egregious circumstances," such

as a case "where employer actively concealed its written severance plan from

employees, set up no claims procedure whatsoever, and denied benefits in contravention

of the plan's plain terms,"  *Ashenbaugh*, 854 F.2d at 1532, such egregious facts have not

been alleged here.

Furthermore, Plaintiffs have not alleged that any of them did not receive proper

notice of the denial of their claim for an individual conversion contract.  (Br. in Supp., Doc.

49, at 19-20.)  They allege only that some unspecified Plaintiffs did not receive the

benefit they sought; this is not a claim to which § 1132 is applicable.  Count VI will

25

therefore be dismissed.

## IX. Count VII: ERISA's Non-Discrimination and Anti-Retaliation Provisions

Under § 510 of ERISA, it is

unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan [or under ERISA or certain other laws] or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan.

29 U.S.C. § 1140.  The remedy for a violation of § 510 is an action under § 502(a), 29 U.S.C. § 1132(a).  *Eichorn v. AT&T Corp.*, 484 F.3d 644, 651 (3d Cir. 2007) (citing *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 144 (1990); 29 U.S.C. § 1140).  Section 510 claims are most often brought against employers, and some courts have held that non-employers are not liable under § 510.  *E.g., Byrd v. MacPapers, Inc.*, 961 F.2d 157, 161 (11th Cir. 1992).  But other courts have held that, because § 510 uses the phrase "any person" and prohibits not only employment-related acts like discharge but also discrimination, actions may be maintained against non-employers, such as insurance companies. *E.g., Mattei v. Mattei*, 126 F.3d 794 (6th Cir. 1997); *Custer v. Pan Am. Life Ins., Co.*, 12 F.3d 410, 421 (4th Cir. 1993); *Tingey v. Pixley-Richards West, Inc.*, 953 F.2d 1124, 1132 n.4 (9th Cir. 1992); *Jackson v. Rohm & Haas Co.*, No. 06-3682, 2007 WL 2668001, at *9-10 (E.D. Pa. Sept. 5, 2007) (vacated in part and modified in part on other grounds, 2007 WL 2702797 (E.D. Pa. Sept. 12, 2007)) (denying employee benefits plan insurer's motion to dismiss § 510 claims).

To state a § 510 claim, Plaintiffs must allege that the Defendants "had the specific

26

intent to violate ERISA" and "made a conscious decision to interfere with [Plaintiffs']

attainment of ... benefits."  *Jakimas v. Hoffman-La Roche, Inc.*, 485 F.3d 770, 785 (3d

Cir. 2007).  Plaintiffs could show this through direct evidence, or they could employ the

*McDonnell Douglas-Burdine* burden-shifting framework.  *Id.*  To make out their prima

facie case under this framework, Plaintiffs must allege that "(1) the [Defendants]

committed prohibited conduct (2) that was taken for the purpose of interfering (3) with the

attainment of any right to which the [Plaintiffs] may become entitled."  *Id.*

To this end, Plaintiffs allege in Count VII that the Blue Cross Defendants took

adverse actions and/or interfered with Plaintiffs' attainment of rights under the plan.

(Doc. 43, ¶ 116).  Plaintiffs have thus alleged the second and third prongs of their prima

facie case.  Regarding the first prong, Plaintiffs claim Defendants' prohibited conduct

included but was not limited to (1) terminating the 2007 group policy; (2) directing

Express Scripts to terminate New Life as a participating provider in the pharmacy

network, (3) prohibiting equal access to pharmacy benefits in retaliation for Plaintiffs'

exercise of their ERISA rights, and (4) creating a specialty pharmacy Network, "forcing

some people's prescriptions to be treated differently than others similarly situated (who

have access to literally thousands of pharmacies throughout the United States to fill their

prescriptions)."  (*Id.*)  Plaintiffs allege that as a result, Plan participants suffered loss of

health benefits.  (*Id.* ¶ 117.)

To the extent these or other actions were adverse to New Life, which lacks

standing under ERISA, they are irrelevant.  However, terminating the group policy, and

perhaps prohibiting equal access to pharmacy benefits, as well as other actions not listed

here but discussed elsewhere in the Amended Complaint, such as not providing all

participants with individual conversion policies, are actions which are adverse to the

individual Plaintiffs.

Defendants argue that the insurance of *all* Plaintiffs was terminated and therefore

that they could not have discriminated against any of them.  (Br. in Supp., Doc. 49, at 21-

22.)  But courts have held that discrimination as it is used in this statute "is not limited to

disparate treatment of similarly situated employees, but includes any adverse action

taken against one or more employees *because of* their decision to engage in protected

activities. ... [T]he anti-retaliation provision of ERISA § 510 ... is not designed to require

employers to treat all persons ... alike, but simply to prevent employers from using

economic leverage to discourage certain activity by those persons that Congress wanted

to protect." *Mattei,* 126 F.3d at 805 (quoting *Stiltner v. Beretta U.S.A. Corp.*, 74 F.3d

1473, 1487-88 (4th Cir. 1996) (en banc) (Philips, J., concurring in part and dissenting in

part)).

The *Mattei* court concluded that in § 510 cases not against employers, the "list of

proscribed actions should be read, in essence, to mean "adverse actions."  *Mattei*

concerned a unique factual situation, however.  The court there reversed dismissal of a

widow's claim that her husband's estate discriminated against her in violation of § 510 by

taking action to deprive her of benefits to which she was entitled under her husband's

pension plan and retaliated against her for accepting such benefits.

In more factually similar situations, The *Custer* court held that to hold an insurer

liable under § 510, a plaintiff must allege "more than the mere denial of a claim."  12 F.3d

at 422.  It reached this conclusion because "a participant or beneficiary who disagrees with the decision on a claim may bring an action under 29 U.S.C. § 1132(a)(1), seeking past benefits and clarification of future rights."  *Id.*  The court in *Plain v. AT&T Corp.*, 424 F. Supp. 2d 11, 18-19  (D.D.C. 2006) followed this limitation as well.  The *Tingey* court's decision was based on the situation in which "an insurer ... coerces an employer to fire an employee."  *See* 953 F.2d at 1132 n.4.  And in *Jackson*, the plaintiff's § 510 claim against the insurer asserted that termination of plaintiff's long term disability coverage was "part of a scheme to interfere with and deny plaintiff employment and benefits to which he was entitled, to interfere with and prevent plaintiff from the proper exercise of his rights, and to ... retaliate against plaintiff."  2007 WL 2668001, at *2 n.4.  Thus, although *Tingey* and *Jackson* did not expressly limit their holdings to their facts, all of these cases involved a discriminatory act that was more than mere denial of a claim.

Nonetheless, I cannot conclude that Plaintiffs' claim is for nothing more than mere denial of a claim.  Part of their allegation is the termination of their insurance entirely, not only denial of a claim to a particular benefit.  Further, their Amended Compliant indicates they may be proceeding under both the interference and the retaliation prongs of § 510, and, as the *Mattei* court recognized, the standard for prohibited conduct in a retaliation claim is less stringent than in an interference claim.  *See* 126 F.3d at 808.  For these reasons, I will not grant Defendants' motion to dismiss Plaintiffs' claim in Count VII.


## X. Preemption of State Law Claims

Defendants argue that Plaintiffs' Pennsylvania state law claims for Breach of

Contract, brought on behalf of all Plaintiffs (Count VIII) and Tortious Interference with

Business and Contractual Relations, brought on behalf of New Life and Malia (Count IX)

are preempted by ERISA, 29 U.S.C. § 1144(a).  A state law claim is preempted under

ERISA if it makes reference to or has a connection with a covered employee benefit plan.

*See Cal. Div. Labor Standards Enforcement v. Dillingham*, 519 U.S. 316, 324 (1997).  A

law makes reference to an ERISA plan if it imposes requirements or creates exemptions

by explicit reference to ERISA plans, if it is a "common-law cause of action premised on

the existence of an ERISA plan," if it "acts immediately and exclusively upon ERISA

plans," or "where the existence of ERISA plans is essential to the law's operation.  *Id.* at

324-25 (citations omitted).  Neither of the state law causes of action here meet these

conditions for "making reference to" an ERISA plan.

But even if a law does not make reference to an ERISA plan, it may still be

preempted if it has a connection with ERISA plans.  *Cal. Div. Labor Standards

Enforcement*, 519 U.S. at 325.  In this inquiry, courts should "tak[e] into consideration the

objectives of the ERISA statute as a guide to the scope of the state law that Congress

understood would survive, as well as to the nature of the effect of the state law on ERISA

plans."  *Id.* (internal quotation marks and citation omitted).  One objective of the ERISA

statute was that its civil enforcement remedies were intended to be exclusive.  *See Pilot

Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 54 (1987).  Thus, the Supreme Court has

held that "state laws providing alternative enforcement mechanisms also relate to ERISA

plans, triggering pre-emption."  *N.Y. State Conference of Blue Cross & Blue Shield Plans

v. Travelers Insurance Co.*, 514 U.S. 645, 657 (1995).  A few years earlier, the Second

Circuit Court of Appeals put it well:  "a state common law action which merely amounts to an alternative theory of recovery for conduct actionable under ERISA is preempted." *Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 288 (2d Cir. 1992).

### A. Breach of Contract

Because the individual Plaintiffs can proceed under 29 U.S.C. § 1332(a) to pursue their claims based on Defendants' termination of the group health insurance plan, their breach of contract claim based on that same termination is preempted as an alternative theory of recovery for conduct actionable under ERISA.  Concerning New Life's claim in Count VIII, however, its lack of standing under ERISA must be considered.  The Third Circuit Court of Appeals held that a Hospital's breach of contract claim against an ERISA Plan, in which it sought to recover payments due to it as a third-party beneficiary of the Plan's contract with a consultant, was not preempted because the Hospital, lacking standing under ERISA "could not have brought its claims under § 502(a)."  *Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 400 (3d Cir. 2004).  The United States District Court for the Eastern District of Pennsylvania also concluded that a hospital's similar claim was not preempted "for two reasons: first, the Hospital does not have standing to sue under this provision, and second, § 1332(a)(1) does not seek to vindicate the type of claim brought by the Hospital."  *Eugenia Hosp. v. Kim*, 844 F. Supp. 1030, 1032 (E.D. Pa. 1994) (noting, in part, that the hospital was not seeking in its breach of contract action "to enforce ... rights under the terms of the plan").  Here, New Life lacks standing, but unlike the Hospital in *Kin*, New Life is seeking to enforce ... rights under the terms of the plan.  *See id.* (quoting 29 U.S.C. § 1132(a)(1)).

31

Guidance in a more similar factual scenario can be found in *Bank of La. v. Aetna U.S. Healthcare Inc.*, where an employer sued the insurance company that administered its employee welfare plan.  468 F.3d 237 (5th Cir. 2006).  The court applied a two (2) prong test:  "A defendant pleading preemption must prove that (1) the claim addresses an area of exclusive federal concern, such as the right to receive benefits under the terms of the Plan; and (2) the claim directly affects the relationship among traditional ERISA entities - the employer, the plan, and its fiduciaries, and the participants and beneficiaries."  *Id.* at 242 (internal quotation marks omitted).  In the second element, "the critical distinction is not whether the parties to a claim are traditional ERISA entities in some capacity, but instead whether the relevant state law affects an aspect of the relationship that is comprehensively regulated by ERISA."  *Id.* at 243.  Because ERISA preemption is an affirmative defense, the burden of proof on both elements rests on the defendant.  *Id.* at 242.

The *Aetna* court held that to the extent the employer asserted a breach of contract claim based on defendant's failure to reimburse it for amounts it actually paid, and to the extent it asserted claims for detrimental reliance and misrepresentation based on the defendant's conduct in negotiations, those claims did not address areas of exclusive federal concern, because they did not depend on the employer proving that the defendant improperly processed benefits claims or administered the plan.  *Id.* at 242-43. Likewise, New Life's claim for breach of contract, based on a dispute about New Life's compliance with its Underwriting Requirements and the parties' communications about those requirements, does not depend on proof that Defendants acted improperly in the

administration of the Plan or violated provisions of ERISA.  With regard to the second

element, the breach of contract claim does not "affect[] an aspect of the relationship that

is comprehensively regulated by ERISA."  *See id.*  Indeed, as the section on New Life's

standing made clear, if, as New Life claims, it did not act as a fiduciary, then its

relationship with the Defendants is not regulated by ERISA.  New Life's breach of

contract claim in Count VIII is therefore not preempted.

### B. Tortious Interference with Business and Contractual Relations

This claim is based on New Life and Malia's independent business relationship

with Defendants and is not an alternative theory of recovery for conduct actionable under

ERISA, with respect to either Plaintiff.  To make their claim, Plaintiffs will not have to

prove that Defendants violated ERISA, and the claim does not involve an aspect of the

parties' relationships that is governed by ERISA.  Therefore, it is not preempted.


### XI. Merits of New Life's Breach of Contract Claim

Defendants argue that New Life's Breach of Contract claim, if not preempted, fails

on the merits, and put forth arguments to that effect.  The first argument, that New Life

allegedly admitted to breaching the contract, cannot be evaluated without further

development of the record, including, at least, the entirety of the 2007 Policy; it also

ignores New Life's waiver and estoppel arguments.  The second argument, that in the

March Settlement, New Life agreed to terminate its group insurance effective March 21,

2007, is based on evidence not properly before the Court, as noted above.  New Life has

stated a claim upon which relief can be granted in Count VIII and Defendants' motion to

dismiss that claim will be denied.

## XII. Merits of Tortious Interference Claim

Under Pennsylvania law, the elements of a claim for tortious interference with contractual relations are:

> (1) the existence of a contractual, or prospective contractual relation between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual legal damage as a result of the defendant's conduct.

*CGB Occupational Therapy, Inc. v. RHA Health Servs. Inc.*, 357 F.3d 375, 384 (3d Cir. 2004); *see also Pawlowski v. Smorto*, 588 A.2d 36, 39-40 (Pa. Super. Ct. 1991) (same language). Plaintiffs have alleged that they had a contractual or prospective contractual relationship with Express Scripts, Blue Cross' pharmacy benefits manager, and also with clients of their pharmacy. (Doc. 43 ¶ 124.) They have alleged that the Defendants took purposeful action intending to harm those relationships, that Defendants did so without privilege or justification, and that they have suffered damage in that Express Scripts terminated them as providers and they then lost clients. (*Id.* ¶¶ 125-28.) Plaintiffs have therefore stated a claim upon which relief can be granted in Count IX.

## CONCLUSION

New Life's claims in Counts I through VII will be dismissed because New Life does not have standing under ERISA, and the individual Plaintiffs' breach of contract claims in Count VIII will be dismissed because they are preempted by ERISA. Defendants' motion

to dismiss Counts III, V, VI, and the claim in Count IV concerning the processing of enrollment forms will also be granted because Plaintiffs did not state claims upon which relief can be granted.

Defendants' motion to dismiss the individual Plaintiffs' claims in Counts I and II will be denied because those claims are not precluded by Defendants' argument that they acted properly when terminating the group coverage.  Because the remaining state law claims are not preempted by ERISA and Plaintiffs have stated claims upon which relief can be granted with regard to the claim in Count IV regarding the option for a waiver, the § 510 claim in Count VII, New Life's breach of contract claim in Count VIII, and New Life and Malia's tortious interference with contractual relations claim in Count IX, Defendants' motion to dismiss those claims will be denied.

An appropriate order follows.

February 14, 2008                                    /s/ A. Richard Caputo
Date                                                        A. Richard Caputo
                                                              United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

NEW LIFE HOMECARE, INC., et al.,

      Plaintiffs,

         v.

BLUE CROSS OF NORTHEASTERN
PENNSYLVANIA, et al,

      Defendants.

CIVIL ACTION No. 3:06-CV-2485

(JUDGE CAPUTO)

**ORDER**

Now, this  14th  day of February, 2008, it is **HEREBY ORDERED** that Defendants'

Motion to Dismiss Plaintiffs' Amended Complaint is **GRANTED** in part and **DENIED** in

part, as follows:

    (1) Defendants' motion to dismiss New Life's claims in Counts I through VII and

        the individual Plaintiffs' claims in Counts III, IV (with respect to processing

        enrollment forms), V, VI, and VIII is hereby **GRANTED**.

    (2) Defendants' motion to dismiss New Life's claim in Count VIII; New Life and

        Malia's claim in Count IX; and the individual Plaintiffs' claims in Counts I, II, IV

        (with respect to an option for a waiver), and VII is hereby **DENIED**.

                         /s/ A. Richard Caputo
                         A. Richard Caputo
                         United States District Judge