IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NEW LIFE HOMECARE, INC., et al., | |
| Plaintiffs, | CIVIL ACTION NO. 3:06-2485 |
| v. | |
| BLUE CROSS OF NORTHEASTERN PENNSYLVANIA, et al., | (JUDGE CAPUTO) |
| Defendants. | |

**MEMORANDUM**

Presently before the Court is the Motion for Summary Judgment (Doc. 97) filed by Defendants Blue Cross of Northeastern Pennsylvania ("Blue Cross") and First Priority Health (collectively "Defendants").[1] Plaintiff New Life Homecare, Inc. ("New Life") claims that Defendants breached the terms of a group insurance contract when they terminated coverage to New Life's employees effective January 1, 2007. Thirteen New Life employees (the "Individual Plaintiffs")[2] claim that the termination of coverage violated multiple provisions of the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, *et seq*. Because Defendants terminated New Life's insurance coverage in compliance with the terms of the parties' agreement, Defendants will be granted summary judgment on New Life's breach of contract claim. And, because Individual Plaintiffs fail to

---

[1] Also named as a Defendant in this action is Highmark Blue Shield. However, because there is no proof on the docket that Highmark Blue Shield has been properly served as required by the Federal Rules of Civil Procedure, the claims against Highmark will be dismissed.

[2] The only Individual Plaintiffs that responded to Defendants' summary judgment motion are Gregory M.J. Malia, Roger Deaton, and Dawn Sweeney-Litchey. As the remaining Individual Plaintiffs have not responded to Defendants' motion and Defendants have met their burden of proof, summary judgment against these Individual Plaintiffs will be granted as unopposed. *See* Middle District Local Rules 7.6, 56.1; *see also Anchorage Assoc. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 175-76 (3d Cir. 1990); *Moultrie v. Luzerne Cnty. Prison*, No. 06-1153, 2008 WL 4748240, at *2 (M.D. Pa. Oct. 27, 2008).

provide reliable, non-speculative summary judgment evidence to contradict Defendants' claim that New Life's insurance plan (the "Plan") was terminated due to a violation of the agreement's terms, Defendants are entitled to summary judgment on Individual Plaintiffs' ERISA breach of fiduciary duty claim, ERISA retaliation and discrimination claim, and ERISA enforcement and clarification of rights claims.

**I. Background**

This is a dispute over the provisions and termination of a contract for group insurance between Blue Cross/Highmark Blue Shield ("Highmark") and Plaintiffs. From January 1, 2006 through December 31, 2006, Blue Cross and Highmark provided health insurance to certain employees of New Life pursuant to a group insurance contract ("the 2006 Policy"). The 2006 Policy could be terminated by the Contract Holder, New Life, "after one year, or at renewal date any year thereafter, by giving written notice to [Blue Cross and/or Highmark] of at least sixty (60) days in advance." The Plan could also be terminated at the option of Blue Cross and/or Highmark for a variety of reasons, including "if the Contract Holder breaches the terms of the Underwriting Requirements." Termination of the Plan by Defendants included the following limitation: "the Plan agrees to notify the Contract Holder of its failure to perform a material obligation . . . and to give the Contract Holder ten (10) days advance written notice prior to termination of the Contract."

The Underwriting Requirements for the 2006 Policy provided that "for groups of 2-50 eligible employees, a minimum of 75% of the eligible participants must be enrolled in the group benefit program," and "no more than 15% of eligible employees may reside more than 20 miles outside of the Blue Cross of Northeastern Pennsylvania/Highmark Blue Shield and/or First Priority Health licensed service area." In addition, the 2006 Underwriting Requirements provided that "whenever any group acquires or loses a significant number of enrolled employees (+/- 15%), the group's coverage may be subject to review, including the possibility of a special renewal at Blue Cross of Northeastern Pennsylvania's/Highmark Blue Shield's and/or First Priority Health's discretion."

As of September 10, 2006, New Life had thirteen (13) employees eligible for the

Plan, and nine (9) employees were enrolled under the terms of the 2006 Policy. And, two (2) of the eligible employees "resided out-of-state." Thus, less than 85% of New Life's eligible employees resided in the permitted service area as of September 10, 2006.

On or about September 10, 2006, New Life employee Roger Deaton, a non-Pennsylvania resident, applied to enroll in the Plan. Mr. Deaton's application for enrollment was approved. As a result, three (3) out of fourteen (14), or 21%, of New Life's eligible employees lived outside the permitted service area.

On October 25, 2006, Defendants sent New Life a letter informing New Life that its rates had been renewed for the upcoming year. The letter enclosed a copy of these rates and provided that "this Group Agreement is comprised of Part I-IV in their entirety and each Part is incorporated herein by reference as if fully set forth at length . . . . "

The Policy governing New Life's group health insurance Plan for 2007 was largely similar to the terms of the 2006 Policy. However, the 2007 Underwriting Requirements varied slightly from the 2006 Requirements and provided that "no more than 15% of enrolled eligible employees may reside more than 20 miles outside of the Blue Cross of Northeastern Pennsylvania/Highmark Blue Shield, First Priority Health, and/or First Priority Life licensed service area."

Despite the October 25, 2006 correspondence, Defendants, less than a month later, sent New Life a letter of termination effective January 1, 2007. According to the November 21, 2006 letter, the Plan was being terminated because "the contract requires that there are no more than 15% of the eligible employees residing more than 20 miles outside of the Plan's licensed service area. Our records indicate your company currently does not meet that requirement."

In response to Defendants' November 21, 2006 termination letter, New Life offered to take remedial measures to alleviate Defendants' concerns. Specifically, after indicating that "other organizations use the same plan and [are] not being restricted on the number of insured out of state employees," New Life offered to "remove an out of state employee" in order to ensure that the Plan was not terminated. Despite New Life's offer to terminate

Mr. Deaton's coverage, Defendants refused the proposal because "New Life Home Care will not obtain eligibility and/or participation compliance in accordance with the terms of your contract, even with consideration of the action being taken with Mr. Roger Deaton's coverage." Defendants reasoned that even without Mr. Deaton's participation in the Plan, New Life would have eight (8) enrolled participants with two (2) living outside the permitted service area. Thus, as of December 5, 2006, 25% of New Life's enrolled participants resided outside of the permitted service area.

On December 7, 2006, New Life President/CEO Gregory M.J. Malia sent a letter to Blue Cross seeking guidance as to how New Life could retain its group coverage. In his letter, Mr. Malia faulted Blue Cross's reasoning for terminating coverage as New Life's "ratios of out of area employees meets your guidelines according to all eligible employees in the New Life group as per the Blue Cross contract. Your letter of December 5, 2006 inaccurately refers to our ratio of out of area employees based upon enrolled rather than eligible employees according to the Blue Care PPO contract."[3]

As the parties were unable to resolve the coverage dispute, Plaintiffs commenced this action on December 29, 2006. The same day, New Life requested a Temporary Restraining Order to prevent Defendants from terminating New Life's insurance coverage. The Court granted Plaintiffs' request and temporarily enjoined Defendants from terminating New Life's insurance coverage. On March 12, 2007, the day before the Court was to hear argument on Plaintiffs' motion for a preliminary injunction, Defendants Blue Cross and First Priority Health and Plaintiffs New Life and Mr. Malia entered into a Partial Settlement Agreement and Release. The parties entered into the Partial Settlement Agreement, in part, for the purpose of "resolving the issues surrounding the Temporary Restraining Order and the Motion for a Preliminary Injunction and the Parties have agreed to resolve those issues and terminate the Motion for a Preliminary Injunction pursuant to the terms of this

---

[3] As set forth above, however, the 2007 Underwriting Requirements permitted no more than 15% of enrolled employees to reside more than twenty (20) miles outside the licensed service area.

Agreement." The Partial Settlement Agreement provided, among other things, that: (1) Blue Cross and First Priority Health would provide health insurance coverage to New Life's employees until March 31, 2007; (2) Blue Cross would provide individual conversion health insurance policies to New Life's employees effective April 1, 2007; (3) Plaintiffs would immediately withdraw with prejudice their motion for preliminary injunctive relief; (4) Plaintiffs would immediately take all necessary steps to have the December 26, 2009 Temporary Restraining Order vacated; (5) Blue Cross or First Priority Health did not admit liability by entering into the agreement; and (6) "nothing in this Settlement Agreement shall constitute precedent or evidence in any other proceeding, with the exception that this Settlement Agreement shall be admissible in any proceeding to enforce its terms." Furthermore, the Partial Settlement Agreement constituted the entire agreement of the parties and "supercede[d] any and all prior agreements or understandings between the parties hereto pertaining to the subject matter of this Agreement." Absent from the terms of the Partial Settlement Agreement, however, was a release or settlement of Plaintiffs' substantive claims underlying this litigation.

After the Court dismissed a number of Plaintiffs' claims on Defendants' motion to dismiss, Plaintiffs proceeded on the following causes of action: (1) New Life's breach of contract claim; (2) Individual Plaintiffs' Enforcement of Plan Terms claim; (3) Individual Plaintiffs' Clarification of Rights claim; (4) Individual Plaintiffs' Breach of Fiduciary Duty claim; and (5) Individual Plaintiffs' ERISA Discrimination/Retaliation claim. Blue Cross and First Priority Health now move for summary judgment on all of Plaintiffs' remaining claims. Defendants' motion has been fully briefed and is now ripe for disposition.

## II. Discussion

### A. Legal Standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c) (2). A fact is material if proof of its existence or nonexistence might affect the outcome of the

suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c)(2). Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *Anderson*, 477 U.S. at 248. An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id*.

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir.1988). The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).

Once the moving party has satisfied its initial burden, the burden shifts to the non-moving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson*, 477 U.S. at 256–57. "To prevail on a motion for summary judgment, the non-moving party must show specific facts such that a reasonable jury could find in that party's favor, thereby establishing a genuine issue of fact for trial." *Galli v. New Jersey Meadowlands Comm'n*, 490 F.3d 265, 270 (3d Cir.2007) (citing Fed.R.Civ.P. 56(e)). "While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla." *Id*. (quoting *Hugh v. Butler County Family YMCA*, 418 F.3d 265, 267 (3d Cir.2005)). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

**B.     The Partial Settlement Agreement Does Not Preclude Plaintiffs' Claims**

Initially, Defendants contend that the Partial Settlement Agreement, which provided

6

for the termination of the group insurance relationship with New Life as of March 31, 2007, precludes New Life's breach of contract claim and Individual Plaintiffs' ERISA claims. (Docs. 98, 172.) Specifically, as to Individual Plaintiffs' ERISA claims, Defendants argue that the agreement to end New Life's group insurance March 31, 2007 terminated Plaintiffs' ERISA Plan, and, therefore, no plan exists for Plaintiffs to continue receiving benefits. In addition, Defendants assert that the Partial Settlement Agreement's termination of the ERISA Plan prevented Individual Plaintiffs from having standing to advance the ERISA claims. (Doc. 98.)

Plaintiffs vehemently contest Defendants' interpretation of the Partial Settlement Agreement. (Doc. 171.) Plaintiffs argue that the Partial Settlement Agreement only resolved a temporary aspect of the case, and did not address the ultimate question of whether Defendants properly terminated the Plan. (Doc. 171.) Essentially, Plaintiffs claim that Defendants interpret the Partial Settlement Agreement "well beyond the scope intended on the face of the document." (Doc. 171.) Conversely, Defendants argue that Plaintiffs' interpretation is flawed and "whatever New Life's subjective intention, however, [is contradicted] by the plain language of the Contract." (Doc. 172.)

The Court does not agree with Defendants that the plain language of the Partial Settlement Agreement requires judgment as a matter of law for Defendants. While Defendants correctly assert that the Partial Settlement Agreement provides for the termination of group insurance on March 31, 2007, it does not necessarily follow, as suggested by Defendants, that the Agreement resolved or precluded Plaintiffs' underlying claims. In particular, in consideration for the continuation of insurance coverage until March 31, 2007, Plaintiffs agreed to withdraw the motion for a preliminary injunction and to have the temporary restraining order vacated. (Doc. 171, Ex. 5.) Yet, the Partial Settlement Agreement did not provide for the release or dismissal of Plaintiffs' claims underlying this litigation. Tellingly, the final recital provided that the parties were "desirous of resolving issues surrounding the Temporary Restraining Order and the Motion for a Preliminary Injunction and the Partes have agreed to resolve those issues and terminate the Motion for a Preliminary Injunction pursuant to the terms of this Agreement." (Doc. 171, Ex. 5.) Thus,

it is not apparent from the face of the Partial Settlement Agreement that Plaintiffs' claims are precluded.  Nevertheless, because Defendants have demonstrated that there is no genuine issue of material fact, and Plaintiffs have failed to offer reliable, non-speculative rebuttal evidence, Defendants will be granted summary judgment on all of Plaintiffs' claims.

**C.   Plaintiffs' Claims**

**1.   New Life's Breach of Contract Claim**

Blue Cross and First Priority Health argue that New Life's breach of contract claim fails on the merits.  Defendants' position is that because New Life failed to comply with the terms of the Underwriting Requirements for the 2006 and 2007 Policies, Defendants properly terminated the group insurance relationship with New Life. (Doc. 98, 12.) New Life, however, asserts that the Plan was automatically renewed for the 2007 calendar year. (Doc. 171, 8.)  In support of this theory, New Life relies on the expert report of Robert S. Wilkinson, C.P.A. (Doc. 171, Ex. 1).  Alternatively, New Life argues that Blue Cross engaged in the "selective enforcement" of its underwriting requirements. (Doc. 171, Ex. 1.)

New Life's breach of contract claim cannot survive summary judgment.  In order to prove a breach of contract claim under Pennsylvania law, a plaintiff must prove "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages." *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir.2003) (quoting *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa.Super.Ct.1999)). Defendants essentially argue that New Life's breach of contract claim fails as a matter of law because Plaintiff cannot establish the second element- that they breached a duty imposed by the 2007 Policy- when New Life's Plan was terminated.

The Court agrees with Defendants that no genuine issue of material fact exists as to whether Defendants breached a duty to Plaintiff when they terminated the Plan. Specifically, Plaintiffs' Amended Complaint and the correspondences between New Life and Blue Cross confirm that in 2006, New Life was not in compliance with the terms of the 2006 or 2007 Underwriting Requirements. (Doc. 43; Doc. 171, Ex. 4.)  And, the plain, unambiguous language of the Policies permitted Blue Cross to terminate New Life's

contract "if the Contract Holder breaches the terms of the Underwriting Requirements." (Doc. 98, Ex. 1.)  Although New Life offers the report of Mr. Wilkinson to support its position that Blue Cross should have provided New Life the opportunity to cure the violations of the Underwriting Requirements, Mr. Wilkinson, nor New Life, provide any contractual language to support this position.[4]  Similarly, New Life fails to identify any provisions of the Policies limiting Defendants' right to terminate coverage when the Contract Holder was in violation of the Underwriting Requirements.[5]  And, outside of unsupported speculation, New Life provides no factual evidence that Defendants' decision to terminate the Plan amounted to selective enforcement of the Underwriting Requirements.  As such, Blue Cross and First

---

[4]   As noted above, Mr. Wilkinson's position that "the group health insurance contract was automatically renewed for 2007 because Blue Cross did not provide notice of non-renewal by November 1, 2006," is not supported by the terms of the Policies. (Doc. 171, Ex. 1.)  Indeed, renewal occurred automatically unless *New Life* provided Defendants with a written notice of cancellation sixty (60) days prior to the expiration of coverage. (Doc. 98, Ex. 1.)  Accordingly, Mr. Wilkinson's report is "insufficient to create a genuine issue of material fact, as it is conclusory and unsupported by the record." *Elec. Ins. Co. v. Estate of Marcantonis*, 755 F. Supp. 2d 632, 636 (D. N.J. 2010): *see also Marvel v. Delaware Cnty.*, No. 07-5054, 2009 WL 1544928, at *17 (E.D. Pa. June 2, 2009).

[5]   The Affidavit prepared by Dawn Sweeney-Litchey also fails to create a genuine issue of material fact. (Doc. 171, Ex. 6.)  In particular, Ms. Sweeney-Litchey asserts that the 2007 renewal occurred pursuant to the "special renewal clause." (Doc. 171, Ex. 6.)  However, the record is devoid of any evidence that the contract was "specially renewed," and the correspondences between New Life and Blue Cross attached to Plaintiffs' opposition do not establish that New Life's Plan was "specially renewed."  In addition, Ms. Sweeney-Litchey's statement that the Plan was "specially renewed" when Mr. Deaton was enrolled is seemingly contradicted by the facts set forth in the Amended Complaint and the terms of the Policies. "Special renewal" was only provided for when New Life acquired or lost 15% of enrolled employees.  And, when Mr. Deaton enrolled, the group increased from nine (9) enrolled employees to ten (10) enrolled employees. (Doc. 43, ¶¶ 43-44.)  As a result, Mr. Deaton's enrollment did not amount to a 15% increase in New Life's group enrollment.

Priority Health are entitled to summary judgment on New Life's breach of contract claim.[6]

### 2. Individual Plaintiffs' Enforcement and Clarification of Rights Claims

Defendants seek summary judgment on Individual Plaintiffs' 29 U.S.C. § 1132(a)(1)(A) enforcement of rights claim and 29 U.S.C. § 1132(a)(1)(B) clarification of rights claim on the basis that New Life's insurance agreement was properly terminated. Specifically, Defendants assert that termination was proper because New Life failed to comply with the applicable Underwriting Requirements. In opposition, Individual Plaintiffs argue that Defendants were obligated to provide New Life with an opportunity to cure the Underwriting Requirement violation or to permit New Life until January 1, 2007 to satisfy the Underwriting Requirements.

"Claims for ERISA plan benefits under ERISA § 502(a)(1)(B) are contractual in nature." *Burnstein v. Ret. Account Plan for Emps. of Allegheny Health Educ. & Research Found.*, 334 F.2d 365, 381 (3d Cir. 2003) (citing *Feifer v. Prudential Ins. Co. of Am.*, 306 F.3d 1202, 1210 (2d Cir. 2002)). Although the meaning of a contract is generally a matter of fact, "a clear and unambiguous contractual provision raises no factual issue." *Taylor v. Cont'l Grp. Change in Control Severance Pay Plan*, 933 F.2d 1227, 1232 (3d Cir. 1991) (quoting *Anderson v. Pittsburgh-Des Moines Corp.*, 893 F.2d 638, 640 (3d Cir. 1990)). And, when the language of a plan is not ambiguous, a court can "interpret the plan as a matter of law." *Taylor*, 933 F.2d at 1232 (citing *Ulmer v. Harsco Corp.*, 884 F.2d 98, 101-02 (3d Cir.

Here, Individual Plaintiffs do not, and cannot, dispute that the Policies provided for the termination of the contracts "if the Contract Holder breaches the terms of the Underwriting Requirements." (Doc. 98, Ex. 1.) Thus, Individual Plaintiffs do not argue that this provision is ambiguous. Instead, Individual Plaintiffs assert that the Policies: (1) automatically renewed because Blue Cross did not provide written notice of termination sixty (60) days before the January 1, 2007 renewal date; and (2) required Blue Cross to provide

---

[6] As Defendants are entitled to summary judgment on New Life's breach of contract claim, the Court need not address Defendants' argument that ERISA preempts New Life's breach of contract claim.

New Life an opportunity to cure the violations of the Underwriting Requirements. Yet, Individual Plaintiffs do not identify, nor could the Court find upon its own review of the Policies, any terms requiring Defendants to provide New Life with an opportunity to cure violations of the Underwriting Requirements. Similarly, the sixty (60) day notice of termination provision applies to termination of the Plan by New Life, not Blue Cross. Additionally, Individual Plaintiffs' expert, Mr. Wilkinson, asserts that "Blue Cross could have offered New Life the right to cure the underwriting requirement." (Doc. 171, Ex. 1.) Again, while it may be true that Blue Cross could have offered New Life an opportunity to cure the Underwriting Requirements, Mr. Wilkinson does not point to any contractual provisions that a chance to cure was mandated by the Policy's terms. And, as unsupported speculation is insufficient evidence to survive summary judgment, Individual Plaintiffs have failed to establish a genuine issue of fact that Defendants improperly denied benefits under the terms of New Life's Plan. Defendants are therefore entitled to summary judgment on Individual Plaintiff's enforcement and clarification of rights claims brought pursuant to 29 U.S.C. §§ 1131(a)(1)(A),(B).

### 3. Individual Plaintiffs' Breach of Fiduciary Duty Claim

Defendants argue that Individual Plaintiffs' breach of fiduciary duty claim fails as a matter of law. Defendants' first argument is premised on their belief that when the parties agreed to the Partial Settlement Agreement the ERISA Plan was terminated. (Doc. 98.) Defendants assert that no plan exists to "take legal title" to any recovery, and therefore Individual Plaintiffs' claim seeks recovery that is not available under ERISA. (Doc. 98.) As noted before, though, the Court does not interpret the Partial Settlement Agreement as broadly as Defendants. Defendants also assert that the breach of fiduciary duty claim fails on the merits because it is inconsistent with the settled legal principle that ERISA plans are to be administered in accordance with the terms of the governing documents. In opposition, Individual Plaintiffs argue that Defendants breached their fiduciary duties by failing to act exclusively in the best interests of Plaintiffs. (Doc. 171.)

Individual Plaintiffs' breach of fiduciary duty claim with respect to Defendants' failure

11

to provide a waiver option for New Life's out-of-state employees is brought pursuant to 29 U.S.C. §§ 1109, 1132(a)(2). To prove a § 1132(a)(2) claim, a plaintiff must show "(1) a plan fiduciary (2) breaches an ERISA-imposed duty (3) causing a loss to the plan." *Leckey v. Stefano*, 501 F.3d 212, 225-26 (3d Cir. 2007) (citing *Roth v. Sawyer-Cleater Lumber Co.*, 61 F.3d 599, 602 (8th Cir. 1995)). A plan fiduciary is required to discharge his duties with respect to the plan "solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1). And, a fiduciary's duties must be discharged "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." *Id*. § 1104(a)(1)(B). Yet, the duty to administer a plan "for the sole benefit of its participants is qualified by [the administrator's] obligation to interpret a plan consistent with the documents and instruments governing the plan." *McElroy v. Smithkline Beecham Health & Welfare*, 340 F.3d 139, 142 (3d Cir. 2003) (citing 29 U.S.C. § 1104(a)(1)(D); *O'Neil v. Ret. Plan for Salaried Employees of RKO Gen., Inc.*, 37 F.3d 55, 61 (2d Cir. 1994)).

Here, it is undisputed that Defendants did not present New Life with the opportunity to waive the out-of-state requirement. Defendants correctly assert that the express terms of the Policies do not require a waiver option to be provided to New Life. Thus, Defendants have sufficiently met their burden of showing a lack of genuine issue of material fact as to why a waiver was not offered to New Life- pursuant to the terms of the Policy.

To rebut Defendants' summary judgment motion, Individual Plaintiffs must set forth some evidence demonstrating that Defendants' refusal to offer New Life a waiver was not predicated on the terms of the Policies. *See, e.g., Galli v. New Jersey Meadowlands Comm'n*, 490 F.3d 265, 270 (3d Cir.2007) ("the non-moving party must show specific facts such that a reasonable jury could find in that party's favor, thereby establishing a genuine issue of fact for trial"). Stated differently, to demonstrate an issue of material fact, Individual Plaintiffs must provide some evidence that Defendants' actions were motivated for reasons

other than compliance with the terms of the Plan documents.

Individual Plaintiffs, however, have failed to provide such evidence. Although Individual Plaintiffs allege that Defendants terminated the Plan "because New Life was a thorn in the side of Blue Cross . . . costing them money, taking customers from them, and taking them to court to enforce their legal rights," (Doc. 171), these suspicions, at this stage of the litigation, do not amount to factual evidence to rebut Defendants' evidence that a waiver of the out-of-state requirement was not offered because of the terms of the Policies. In addition to Plaintiffs' suspicions as to why a waiver was not offered, Plaintiffs assert:

- "Insurers typically afford small groups a waiver . . . in the enrollment process";

- "Blue Cross could have offered the New Life group a waiver of the underwriting requirement with regard to the enrollment of Roger Deaton and modified its renewal rates accordingly";

- "If Blue Cross does not have an underwriting and waiver process that it can demonstrate is consistent and applied equally to all groups in this community rating pool, it appears they are selectively enforcing underwriting standards and thereby selecting who will be insureds to benefit their plan. They have the capability to identify group costs within the community pool and most likely knew that New Life was a very expensive group. With this insured out of the community rating pool, the overall costs would improve."

(Doc. 171, Ex. 1.) While these statements from Mr. Wilkinson's report demonstrate that Defendants could have elected to offer New Life a waiver, Individual Plaintiffs have not provided any non-speculative evidence as to *why* Defendants did not offer New Life the opportunity to waive the out-of-state requirement. Simply put, Plaintiffs are attempting to survive summary judgment without any concrete evidence in the record to support their theory. Without this evidence, Defendants have failed to show that some material fact remains indicating that Defendants' refusal to provide New Life with a waiver option was a breach of their fiduciary duties. Defendants are therefore entitled to summary judgment on Individual Plaintiffs' breach of fiduciary duty claim.

### 4.    Individual Plaintiffs' Discrimination/Retaliation Claim

Defendants also seek summary judgment on Individual Plaintiffs' final claim for relief brought pursuant to the non-discrimination and anti-retaliation provisions of ERISA.

Defendants argue that the they did not engage in any discriminatory acts in violation of 29 U.S.C. § 1140 because they were contractually authorized to terminate New Life's group insurance based on New Life's failure to comply with the Underwriting Requirements. (Doc. 98.) Additionally, Defendants assert that they cannot be liable under the anti-retaliation provisions of § 1140 because Individual Plaintiffs have not alleged that they engaged in any protected activity and no evidence in the record supports such a claim. (Doc. 98.) Conversely, Individual Plaintiffs argue that any "number of reasons for discrimination are available for interpretation" based on Mr. Wilkinson's opinion that "Blue Cross acted with selective enforcement in the fashion in which it terminated New Life's coverage." (Doc. 171.) Individual Plaintiffs specifically assert:

> Blue Cross has maintained that this matter was simply a generic cancellation of service because of a numbers calculation pursuant to their underwriting policies. They fail, of course, to offer any statistical analysis as to how often they proceed in similar fashion, when, if ever, they make accommodations as Mr. Wilkinson suggests they easily could have, or in any fashion show that they treated the Plaintiffs as they would anyone else. This is especially vital in light of the fact that Blue Cross does not, and has not, treated the Plaintiffs as they do their various other insured.

(Doc. 171.)

29 U.S.C. § 1140 states:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, [ or under ERIS or certain other laws], or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan.

29 U.S.C. § 1140. "[T]he essential element of proof under § 510 is specific intent to engage in proscribed activity." *Gavalik v. Cont'l Can Co.*, 812 F.2d 834, 851 (3d Cir. 1987). Thus, the plaintiff must show that the defendant "'made a conscious decision to interfere with [the plaintiff's] attainment of . . . benefits." *DiFederico v. Rolm Co.*, 201 F.3d 200, 205 (3d Cir. 2000) (quoting *Dewitt v. Penn-Del Directory Corp.*, 106 F.3d 514, 523 (3d Cir. 1997)).

To establish that the defendant acted with a specific intent to prevent the attainment of benefits, the plaintiff may rely on direct and circumstantial evidence. *See DiFederico*, 201 F.3d at 205. However, "when there is no direct evidence [availablle], courts use a

*McDonnell Douglas-Burdine* type of burden shifting scheme to determine whether the plaintiffs have proved their case." *Jakimas v. Hoffmann-La Roche, Inc.*, 485 F.3d 770, 786 (3d Cir. 2007) (citing *DiFederico*, 201 F.3d at 205). Under this burden-shifting analysis:

> the plaintiff must first establish a *prima facie* case by showing: (1) prohibited . . . conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the [plaintiff] may become entitled. If the plaintiff is successful in demonstrating her *prima facie* case, the burden then shifts to the defendant, who must articulate a legitimate, nondiscriminatory reason for the prohibited conduct. If the [defendant] carries its burden, the plaintiff then must persuade the court by a preponderance of the evidence that the [defendant's] legitimate reason is pretextual.

*DiFederico*, 201 F.3d at 205 (internal citations omitted). Typically, § 510 claims are proven through the use of the burden-shifting analysis, as "specific intent to discriminate [is rarely] demonstrated by 'smoking gun' evidence." *Gavalik*, 812 F.2d at 852.

Here, Individual Plaintiffs have not provided any direct evidence that Defendants specifically intended to discriminate against New Life employees. That is, Individual Plaintiffs have not "demonstrated 'decision makers placed substantial negative reliance on an illegitimate criterion in reaching their decision.'" *Jakimas*, 485 F.3d at 786 (quoting *Anderson v. Consol. Rail Corp.*, 297 F.3d 242, 248 (3d Cir. 2002)). Individual Plaintiffs' evidence is that Defendants have not shown that other insurance groups were treated in the same manner as New Life. This does not amount to direct evidence that Defendants intended to interfere with Individual Plaintiffs' benefits and "does not reveal the requisite intent to engage in proscribed activity such that 'it is unnecessary to rely on any presumption from the *prima facie* case to shift the burden of production.'" *Jakimas*, 485 F.3d at 786 (quoting *Anderson*, 297 F.3d at 248).

As such, Individual Plaintiffs can survive summary judgment on the § 510 claim only if they provide circumstantial evidence in accordance with the above referenced burden-shifting analysis. Individual Plaintiffs seemingly assert that Defendants engaged in prohibited conduct by terminating New Life's Plan with the purpose of preventing Individual Plaintiffs from obtaining health insurance benefits. Because the burden to establish a *prima facie* case is not onerous, and the court must draw all reasonable inferences in favor of

Plaintiffs, *see Jakimas*, 485 F.3d at 787, the Court will proceed, with hesitation, as though Individual Plaintiffs established a *prima facie* case.

Nevertheless, the inquiry does not end, as Defendants have articulated a non-discriminatory reason for terminating coverage. Specifically, Defendants assert that the Plan was terminated pursuant to the express terms of the Policies. Defendants have therefore satisfied their burden of production. *See Jakimas*, 485 F.3d at 787.

The burden thus shifts back to Individual Plaintiffs to "prove by a preponderance of the evidence that the reasons articulated by [Defendants] are not credible or that [benefit] avoidance was the real motivating or determinative factor." *Id*. at 788 (citing *DiFederico*, 201 F.3d at 206-07). Individual Plaintiffs "'must put forward enough evidence to create a genuine issue of material fact as to whether' the proffered reasons were prextextual. This requires [Individual Plaintiffs] to 'demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the [Defendants'] proffered legitimate reasons for its actions.'" *Jakimas*, 485 F.3d at 788 (citing *Kowalski v. L & F Prods.*, 82 F.3d 1283, 1289 (3d Cir. 1996)). Nothing in the record, though, proves by a preponderance of the evidence that Defendants' articulated reason for terminating New Life's coverage- based on New Life's failure to comply with the Policies' Underwriting Requirements- lacks credibility or was done with the intent to impermissibly interfere with Individual Plaintiffs' benefits. Outside of the allegations in Plaintiffs' opposition asserting that coverage was cancelled due to New Life being "a thorn in the side of Blue Cross," (Doc. 171), the only evidence in the record potentially implicating that Defendants improperly terminated New Life's Plan are speculations offered by Mr. Wilkinson. (Doc. 171, Ex. 1). Mr. Wilkinson hypothesizes that "it appears [Defendants] are selectively enforcing underwriting standards," and "Blue Cross's apparent inconsistent and selective enforcement of the underwriting requirements by terminating the entire New Life group contract is inconsistent with this purpose." (Doc. 171, Ex. 1.) Yet, Mr. Wilkinson offers no facts in support of his theory that Defendants treated New Life differently than any other contract holders. Thus, the Court "'in this case, simply cannot make the unfounded inference that [Defendants] acted with the

specific intent to interfere with the plaintiffs' attainment of benefits.'" *Jakimas*, 485 F.3d at 788 (quoting *DiFederico*, 201 F.3d at 207). Therefore, as Individual Plaintiffs have failed to prove that Defendants' proffered reason for terminating the Plan was pretextual, Defendants will be granted summary judgment on Individual Plaintiffs' § 1140 claim.

### III. Conclusion

For the above stated reasons, Defendants' motion for summary judgment will be granted.

An appropriate order follows.

| | |
|---|---|
| May 3, 2012<br>Date | /s/ A. Richard Caputo<br>A. Richard Caputo<br>United States District Judge |